**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 06-80750-CIV-HURLEY**

**BOCA RATON COMMUNITY HOSPITAL, INC.,**
     **plaintiff,**

**vs.**

**GREAT-WEST HEALTHCARE OF FLORIDA**
**f/k/a ONE HEALTH PLAN OF FLORIDA, INC.,**
     **defendant.**
_____/

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**
**& PARTIAL SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF**

This is an action in which a hospital is seeking to recover over $2 million dollars in alleged under- payments from a health maintenance organization. The case is currently before the court on the parties' cross-motions for summary judgment. [DE# 66, 68] For reasons that follow, the court has determined to grant the plaintiff's motion for summary judgment in limited part, and to deny the defendant's motion for summary judgment.

**I. Fact Background**

The resolution of this case requires an understanding of the relationship between three entities. The plaintiff Boca Raton Community Hospital, Inc. ("the Hospital") is an acute care general hospital providing health care services to persons in Palm Beach County, Florida. The defendant Great-West Healthcare of Florida, Inc. ("Great-West Healthcare") is a licensed health maintenance organization providing health insurance to policyholders in the State of Florida. The third entity, Private Health Care Systems, Inc. ("PHCS") is not a party to suit, but is a limited partnership of insurance carriers which brokers "preferred provider" agreements between health

care providers and health insurance carriers.  Essentially, PHCS negotiates discounted rates for medical services with hospitals and physicians,  and then contracts those  rates with health insurers and  plan  administrators  in  exchange  for  a  brokerage  fee.  Under  these  brokered  contracts  or "preferred provider" agreements,  the  insurers receive a discount off the provider's "regular billing rates" in exchange for steerage of more business to the provider  through  special financial incentives and publicity which the insurers and plan administrators direct to their plan members.

Participation in the PHCS partnership is memorialized  by a signed agreement.  It consists of a standardized  form which  PCHS submits to the health care provider for signature, and then brokers to prospective participant insurers for acceptance.  In pertinent part, the  Agreement provides at   Section 1.8 that each  "carrier or subsidiary" wishing to  participate in  the PHCS-PPO contract must execute a written "acceptance" or consent agreeing to be  bound to its terms in a form attached to the Agreement.

At Section 1.5, the Agreement more specifically defines a carrier or subsidiary to mean "a partner" of PCHS."[1]  At Section 1.9, the Agreement states that any carrier or subsidiary that does sign an acceptance form may  exercise rights under the Agreement  only as to itself and not on behalf of any other carriers or subsidiaries.  Finally, at  Section 10.2,  the Agreement contains the following restriction against assignment:

> No  assignment  or  subcontracting  of  the  rights,  duties  or  obligations  of  this Agreement shall be made by either party  without the express written approval of a duly authorized representative of the other party.

_____

[1]  The Agreement was amended effective October 1, 1990.  As amended, the Agreement provides at Section 1 that "the terms 'carrier' or 'subsidiary' refer to companies affiliated with Private Healthcare Systems Ltd. (PHCS")."  A Section 1.5 of the Amended Agreement,  a "carrier or subsidiary" is defined as "a partner or service subscriber of PHCS."

On March 24, 1989, PHCS  negotiated a "Preferred Hospital Agreement" ("Agreement") with Boca Raton Community Hospital, making the Hospital a  part  of PCHS's "preferred provider" network.  Under the Agreement, the Hospital agreed  to provide health care to people who were members of the PCHS network at pre-set discounted rates, while PCHS agreed to broker the contract to insurers willing to be bound by its terms.

Effective April 15, 1989, an entity known as Great-West Benefit Services, Inc. ("Great-West Benefit") agreed  to participate in the Preferred Hospital Agreement with Boca Raton Community Hospital by signing and submitting the required consent  acceptance form which is attached  to the Agreement as "Exhibit A."  This Agreement was initially effective for a one year term, commencing April 15, 1989, with provision  for automatic renewal, ¶ ¶ 3.1, 3.3, but allowed for unilateral termination  at any time by either party, with or without cause. ¶ 3.5.  Through  its relationship with various plans, Great-West Benefit then provided financial incentives that encouraged plan participants to receive their medical care at in-network, contracted providers and medical facilities, such as Boca Raton Community Hospital.

On July 30, 1998, Great-West Benefit advised the Hospital, by certified mail, that it  intended to delegate certain "non- material  administrative services," which it provided under the Agreement, such as benefit payments and member enrollment,  to its wholly-owned managed care subsidiary, One Health Plan of Florida, Inc.("One Health").[2]  The letter further advised that One Health would be assuming all contract negotiation, administration  and other services previously performed by PHCS under the contract, but  that the "contract is not being changed in any other way."  Further,

_____

[2] On July 18, 2003, One Health Plan of Florida Inc. changed its name to Great-West Healthcare of Florida, Inc., the named defendant in this action.

3

Great-West Benefit invited the Hospital to voice any objection to the "assignment of your contract to [One Health Plan of Florida]" in writing within two weeks time, failing which it intended to assume the Hospital's agreement to the new arrangement. Notably, this letter was simply addressed to the Hospital without designation of any specific individual or department, contrary to the requirements of the 1993 Amendment to the Preferred Hospital Agreement which prescribes that any notice under the Agreement be sent to either "Lynn Dowling" or the business development office of the Hospital.

PHCS responded to Great-West Benefit's decision by advising it that Great-West Benefit no longer had the right to participate under any preferred provider agreements negotiated by PHCS. First, by memo dated July 30, 1998, PHCS advised Great-West Benefit that in consequence of its decision to "transition its business" to One Health, it had effected a "complete withdrawal of network business from PHCS" and should no longer be listed on any "client Exhibit" of any provider contract. Second, on October 1, 1998, PHCS sent a letter to Great-West Benefit confirming that Great-West Benefit was no longer a client of PHCS and had no right to participate in management services or PPO services offered by PHCS.

Great-West Benefit did not advise the Hospital of this PHCS advisory or otherwise alert the Hospital that it had lost its rights under the PHCS contract when it voluntarily withdrew from the PHCS -PPO network.

Thereafter, One Health Plan of Florida, Inc. n/k/a Great-West Healthcare of Florida ("Great-West Healthcare") continued to pay the Hospital at the discounted rates scheduled for participating subscribers of the PHCS- PPO contract on claims submitted by Great-West insureds, and the Hospital continued to accept those discounted rates from Great-West Healthcare.

In 2001, there was another amendment to the Preferred Hospital Agreement which involved a rate change applicable to all participating carriers in the PHCS-PPO network. This apparently triggered the Hospital's initial inquiry into a problem with the payments submitted by One-Health n/k/a Great-West Healthcare, which continued to pay under the old rate schedule after the participating carriers implemented the higher pay rates. At some later point in time, undetermined on the present record, the Hospital learned that One-Health's parent corporation, Great-West Benefit, had voluntarily withdrawn from the PHCS PPO network several years earlier when it transitioned its business to its own PPO network.

In July, 2003, One Health changed its name to Great-West Healthcare of Florida, Inc., the sole defendant named in this action.

The Hospital subsequently asked Great-West Healthcare to formally acknowledge that it was not a proper party to the PHCS Preferred Hospital Agreement. It also requested repayment of all the discounts which Great-West Healthcare had taken since the withdrawal of Great-West Benefits from the PHCS network in 1998 – a total of $2,253,597.95 – representing the difference between the Hospital's "usual and customary charges" minus payments it did receive for healthcare services rendered to Great-West insureds between 1998 through May 20, 2005. Great-West Healthcare refused to make the requested acknowledgment, and by letter dated May 20, 2005, the Hospital formally terminated its relationship with it under the Preferred Hospital Agreement.

The parties to this action have since negotiated a new provider contract between themselves, but the current contract specifically excludes consideration of the Hospital's claimed right to additional payments for the period between 1998 and May 1, 2005, the contested time span reserved for determination in this lawsuit.

5

## II. Claims and Counterclaims

In its operative second amended complaint, the Hospital seeks to recoup the alleged under-payments from Great-West Healthcare via assertion of an ERISA claim (derivative) for unpaid benefits due for medical services rendered to Great-West's insureds; equitable common law claims (quantum meruit, promissory estoppel, quasi-contract),  Florida statutory claims (violation of § 641.513, Fla. Stat., violation of §§ 627.613 and 641.3155, Florida Statutes), and a third-party beneficiary contract claim.

In response, the defendant maintains that Great-West Benefit Services, Inc. and all of its affiliates, including the named defendant, Great-West Healthcare, remained parties to the Agreement at all  material times, irrespective of the 1998 delegation of duties or assignment to One Health.

With this predicate, the defendant Great-West Healthcare denies  that it wrongfully claimed the benefit of discounted  provider rates under the Agreement at any time,  and in further affirmative defense to the Hospital's claims asserts:

(1)  By continuing to accept  discounted payments  from Great-West Benefit affiliates such as the defendant Great-West Healthcare for years after Great-West Benefit withdrew from the PCHS PPO network in 1998,  the Hospital has ratified  Great-West Healthcare's right to participate in the Preferred Hospital Agreement and its corollary entitlement to participate in the discounted fee schedule fixed by the Agreement;

(2)  The Hospital's claims are absolutely barred by the applicable state statutes of limitations and/or the equitable doctrine of laches.

(3) The Hospital's  state law claims are alternatively  preempted by ERISA.

By  way of counterclaim,  Great-West Healthcare, in turn, charges the Hospital with:

(1)  breach of contract, based on the Hospital's alleged  failure to honor the contractually agreed upon and  discounted payment schedule fixed by the Agreement for participating carriers;

(2) breach of implied covenant of good faith and fair dealing, based on the Hospital's alleged failure  to honor the terms of the Agreement while at the same time  continuing  to accept a large numbers of referrals from Greatwest subscribers; (3)  promissory estoppel,  based on the Hospital's continued  receipt and  acceptance of discounted payments from Great-West Healthcare and Great-West Healthcare's  corresponding  reliance  evinced by  its continued referral of subscribers to the Hospital.

### III. Discussion

At the outset, the Hospital argues that Great-West Healthcare is collaterally estopped from challenging the conclusion that it  forfeited  its  rights of participation  in the  Preferred  Hospital Agreement when Great-West Benefit  withdrew from  the PHCS  network in 1998, claiming that this issue was previously litigated and decided against the Great-west affiliates in a Texas case brought by another, unrelated  health care provider.  *Crossroads of  Texas, LLC  v Great West Life & Annuity Insurance Co.*, 467 F. Supp.2d 705 (S. D. Tex. 2006 ).  However, the parties in the Texas case  are  not  identical  to  the  parties  in  this case,  and  the  contractual   import  of  Great West's withdrawal from the PHCS PPO network in Texas  was not  an  issue necessarily determined in that litigation.[3]    The doctrine of collateral estoppel is  therefore  unavailable to the Hospital here as a

---

[3]        In the Texas case, Greatwest was charged with falsely claiming entitlement to discounts under a  Preferred Hospital Agreement after it ceased participation in the PHCS Texas PPO network.  The district court opinion only decided  the issue of ERISA preemption, finding no preemption  under ERISA on theory that   the  existence of a provider (PPO network contract) contract directly between the health care providers and the  insurer created  a cause of action

vehicle to preclude re-litigation of the threshold issue of contract interpretation posed in this lawsuit. *See generally McGowan v. C. I .R.*, 187 Fed Appx. 915 (11th Cir. 2006).

### A. Impact of Great-West Benefit's Withdrawal from PHCS PPO Network

On the merits of the threshold issue of contract interpretation, the court finds, as a matter of law, based on the unambiguous language of the Preferred Hospital Agreement, that Great-West Benefit fell outside the contractual definition of a participating "carrier or subsidiary"when it transitioned business to its own PPO network in1998, giving One Health all the duties of contract negotiation, administration and other services previously performed by PHCS under the Agreement. With that move, Great-West Benefit effectively withdrew from the PHCS PPO partnership because it was no longer a "partner" or "affiliate" of PHCS. Without such affiliation, it no longer met the contractual definition of a "carrier or subsidiary," to wit, "a partner of PHCS."

Thus, after its withdrawal from the PHCS PPO network, neither Great-West Benefit nor any of its affiliates had a contractual right to participate in or claim rate discounts under the Agreement, nor could Great-West Benefit effectively assign any rights of participation under the Agreement to any affiliate, including its wholly owned managed care subsidiary, One Health, to which it made a purported "limited delegation" of duties under the Agreement in 1998.

In seeking to avoid this result, Great-West Healthcare argues that existence of a contractual relationship between it and PHCS (which is not a party to the Preferred Provider Agreement) is

---

independent of the provider's derivative right to claim benefits under their patients' ERISA plans. *Id*., citing *Blue Cross of California v Anesthesia Care Assocs. Med. Group., Inc*., 187 F.3d 1045 (9th Cir. 1999). *See also Memorial Hospital System v. Northbrook Life Ins. Co.*,904 F.2d 236 (5th Cir. 1990)(state law claims that are neither based on terms of ERISA nor brought by or against any party to ERISA plan are generally not subject to complete preemption).

immaterial to the continued vitality of its contractual rights with the Hospital under the Agreement. As discussed above, this argument fails because Great-West's affiliation or partnership with PHCS is a necessary pre-requisite to its participation in the Agreement as a "carrier" or "subsidiary" as those terms are defined in the Agreement.

Alternatively, Great-West Healthcare urges the court to consider certain pieces of extraneous evidence in support of a contrary interpretation: (1) First, that the parties continued to perform as usual under the Agreement after Great-West Benefit withdrew from the PHCS PPO network in 1998, evincing the Hospital's own intent and belief that the Agreement remained in force during that time frame; (2) Second, that the Hospital sent a formal termination letter to Great-West Healthcare in May 2005, advising that "as of this date," the Hospital considered itself to be a "non-participating provider entitled to 100% of its usual and customary charges for any "future services" rendered by the Hospital for Great-West insureds. In Great-West's view, this choice of syntax implies that the Hospital itself believed that the Agreement remained in force for the Great-West affiliates up until that point in time.

However, because the court has found the controlling language of the contract to be unambiguous on the point, the parole evidence rule would preclude extraneous evidence of the parties' intent. *In re Yates Development, Inc.*, 256 F.3d 1285 (11th Cir. 2001).

**B.  Effect of Hospital's Acceptance of Discounted Rates: Ratification Defense**

Great-West Healthcare alternatively argues that the Hospital ratified its role as a participating carrier under the Agreement by failing to object to Great-West Benefit's delegation of certain duties to One Health and creation of its own PPO network in 1998, and by thereafter continuing to accept reduced payments from Great-West while enjoying the benefits of its patient

referrals.

Ratification occurs where a party with full knowledge of all material facts makes an affirmative showing of his or her express or implied intention to adopt an act or contract entered into without authority. *Zurstrassen v Stonier*, 786 So.2d 65 (Fla. 4th DCA 2001). In this case, Great-West Healthcare has not established that the Hospital ratified its participation in the Agreement with "full" knowledge of the material facts because it is unclear at what juncture the Hospital learned that Great-West Benefit, the parent corporation and original signatory to the Agreement, had withdrawn from PHCS PPO network.

Until that point, the Hospital's continued acceptance of reduced payments and patient referrals from Great-West Healthcare was not made with "full," actual knowledge of the material facts pertinent to a ratification of its entitlement to participate under the Agreement. Whether the Hospital should have known of the withdrawal at some earlier point in time is not germane, because the doctrine of constructive knowledge generally does not apply to bring about a ratification. *Frankenmuth Mutual Ins. Co. v Magaha*, 769 So.2d 1012 (Fla. 2000).

Because there is a genuine issue of material fact on this point on the current record, the court has determined to deny the parties' cross motions on the defense of ratification.

## C. ERISA Preemption of State Law Claims

ERISA comprehensively regulates employee benefits plans and provides "an exclusive federal cause of action" for the recovery of benefits governed by an ERISA employee benefit plan. In particular, ERISA provides an exclusive federal cause of action if the plaintiff is seeking relief that is available under 29 U.S.C. §1132(a)(1)(B). *Butero v Royal Macabees Life Ins. Co.*, 174 F.3d 1207 (11th Cir. 1999). For example, a suit by a beneficiary to recover benefits from a covered plan

falls under § 1132(a)(1)(B), and is subject to complete federal preemption.  *Metropolitan Life Ins. Co. v. Taylor,*  481 U.S.58, 62-63, 107 S. Ct. 1542 (1987).

In this case, plaintiff challenges the defendant's alleged failure to pay full billed benefits for medical services provided by plaintiff to participants in HMO plans created by the defendant. Defendant contends that all of plaintiff's state law claims are akin to claims for relief available under ERISA's civil enforcement provisions, and therefore are governed and completely preempted by ERISA.

A state law "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 103 S. Ct. 2890, 2900, 77 L. Ed.2d 490 (1983).  However, some state laws may affect an ERISA plan in "too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan. *Id*. at 100 n. 21.  Based on this Supreme Court precedent, several of the Circuits, including the Eleventh, have found that state law claims brought by health care providers against plan insurers have too remote an effect on ERISA plans to be preempted by the Act. *Lordmann Enterprises, Inc. v Equicor, Inc*., 332 F.3d 1529 (11th Cir. 1994), citing *Hospice of Metro Denver Inc. v Group Health Ins.,* 944 F.2d 752 (10th Cir. 1991); *Memorial Hosp. System v Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990).

The rationale is that preemption in a third party health care provider case would defeat rather than promote the underlying goal of ERISA, to wit, the protection of the interests of employees and beneficiaries covered by benefit plans.  This follows because the "commercial realities " of the health care industry require that health care providers be able to rely on insurers' representations as to coverage. *Memorial Hosp. at* 246.  If ERISA had the effect of preempting their potential state claims for misrepresentation, health care providers would not be able to rely as freely

11

on representations made by the carriers, and would be forced to either deny care or raise fees to protect themselves against the risk of non-coverage– either one of which would leave covered employees finding medical treatment more difficult to obtain. Additionally, it is said that disputes which arise between a health care provider and insurer in this context do not "arise under" an ERISA plan, but rather arise "precisely because there is no ERISA plan coverage." *Id.*

Second, ERISA does not preempt "run of the mill" claims by non-ERISA entities against ERISA plans. *Mackey v Lanier Collection Agency & Service,* 486 U.S. 825, 108 S. Ct. 2182 (1988). Third, a health care provider's claim against a provider of insurance under a plan is thought to have only an indirect effect on the relationship between the principal ERISA entities. *Memorial Hosp* at 249. Finally, unlike employers and employees who gave up state law causes of action because of ERISA in exchange for obtaining federal causes of action under ERISA, health care providers are not parties to the ERISA "bargain" and they do not have an independent, direct private right of action under the statutory scheme as an ERISA participant. *Id.* See ERISA § 502(a); 29 U.S.C. § 1132(a).

Following the holding in *Lordmann Enterprises*, the court rejects the defendant's ERISA preemption argument and shall allow the plaintiff's state common law and statutory claims to stand, even though plaintiff has also asserted claim as an assignee in its patients' benefits.

### D.  Time Bar on State Law Claims: Statute of Limitations Defense

Great-West Healthcare further asserts in affirmative defense that all of the Hospital's claims are barred by the applicable state statutes of limitations which range between four to five years on the various claims asserted [ERISA claim (five year)(borrowing state breach of contract statute); quasi-contract (four year); promissory estoppel & statutory violations (four year), breach of third -

party beneficiary contract (5 year) and declaratory judgment ( 5 year)].

This defense rests on the premise that all of the plaintiff's claims accrued in September 1998, when defendant's corporate affiliate, Great-West Benefit, allegedly "breached" the Agreement by withdrawing from the PCHS PPO network. With this premise, the defendant asserts that the statute of limitations expired on all claims, on the outside, by September 2003.

The court rejects the urged limitations defense because it rests on a faulty accrual date. Great-West Benefit voluntarily withdrew as a participating carrier from the PHCS PPO network in 1998 when it severed its affiliation with PHCS and transitioned business to its own PPO network. This act cannot reasonably be viewed as a "breach" of the Agreement, because the Agreement on its face prescribes that it may be terminated by either party at any time, with or without cause, with certain notice requirements.

Thus, the plaintiff's causes of action did not accrue in 1998, when Great-West Benefit withdrew from the PCHS PPO network, but rather its claims accrued at each subsequent point in time when Great-West Healthcare allegedly "underpaid" on claims for medical services submitted by Great-West insureds, with each alleged underpayment constituting an individual breach that triggers a new limitations period. *Holiday Furniture Factory Outlet Corp. v State Dept of Corrections*, 852 So.2d 926 (Fla. 1st DCA 2003). Within this framework, the maximum claims recovery period is appropriately confined to those claims submitted between August 7, 2001 (five years prior to suit filing date) and May 20, 2005 (the date on which the parties agreed to a new contract).

The Hospital urges for a longer limitations period, invoking equitable tolling principles. Here, it argues that it was not reasonably on notice of the alleged under payments by Great-West

13

Healthcare until 2001 when a new rate schedule went into effect and Great-West continued to pay at the old rates after all the participating carriers implemented the new schedule.

However, Florida recognizes neither the discovery rule nor fraudulent concealment as a vehicle for tolling the five year limitations period for actions predicated on obligations imposed by contract. *Beck v Lazard Freres & Co .,* 175 F.3d 913 (11th Cir. 1999); *Federal Insurance Co. v Southwest Fla. Retirement Center, Inc.,* 707 So.2d 1119 (Fla. 1998). *Abbott Laboratories, Inc. v General Electric Capital*, 765 So.2d 737 (Fla. 5th DCA 2000); *Allapattach Services, Inc. v Exxon Corporation*, 188 F. R. D. 667 (S.D. Fla. 1999).

Therefore, because plaintiff filed this suit on August 7, 2006, under application of the maximum possible statute of limitations, the court's inquiry is appropriately confined to claims for alleged under payments made between August 7, 2001, and May 20, 2005, the date the parties voluntarily submitted to a new rate schedule.

### IV. Decretal Provisions

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1. Defendant/counter-plaintiff **GREATWEST HEALTHCARE OF FLORIDA f/k/a ONE HEALTH PLAN OF FLORIDA, INC.'S** motion for summary judgment [DE# 66] is **DENIED** as to all claims, affirmative defenses and counterclaims.

2. Plaintiff/counter- defendant **BOCA RATON COMMUNITY HOSPITAL'S** motion for summary judgment [DE# 68] is **GRANTED in PART** and **DENIED in PART** as follows:

a. On the threshold issue of contract interpretation, the motion is granted, with the following declaratory judgment entered in favor of the plaintiff:

Under the unambiguous terms of the Preferred Hospital Agreement, once Great-West Benefit withdrew from the PHCS PPO network in 1998, neither Great-West Benefit nor any of its affiliates was entitled to participate in and claim rate discounts as "carrier" or "subsidiary" under the Agreement. Therefore, as of July 30, 1998, the defendant in this case, Great-West Healthcare of Florida f/k/a One Health Plan of Florida, had no contractual right to participate in the Agreement either by virtue of its status as a corporate affiliate of Great-West Benefit, or by virtue of its status as an assignee of Great-West Benefit.

b. The court further finds as a matter of law that the Hospital did not, through its conduct, ratify Great-West Healthcare's entitlement to participate in the Agreement by continuing to accept reduced payments while enjoying the benefit of patient referrals from Great-West Healthcare, at least up until that point in time at which the Hospital gained actual knowledge of the withdrawal of Great-West Benefit from the PHCS PPO network. After that point, the issue of ratification is appropriately reserved for resolution by the trier of fact at trial, to be determined in conjunction with all the circumstances attendant to the parties' continuing relationship at that juncture.

Therefore, the plaintiff's motion for summary judgment on the issue of ratification is granted in limited part to the extent outlined in this order.

c. The court further finds as a matter of law that the maximum statute of limitations on the Hospital's claim for recovery of alleged under- payments is five years, running from the date each individual claim was submitted on behalf of a Great-West insured and underpaid by the Great-West Healthcare. Thus, the recovery period is limited to claims submitted between August 1, 2001 and May 20, 2005.

Accordingly, the plaintiff's motion for summary judgment on the statute of limitations

15

defense is granted in limited part to the extent outlined in this order.

       d.  The plaintiff's motion  for summary judgment on the defendant's  ERISA preemption defense is granted.

       e.   Given the findings which the court has made on the threshold issue of contract interpretation based on the unambiguous terms of the Agreement, the court questions the reasonableness of  the defendant's purported reliance on the Hospital's continued acceptance of discounted payments as a premise for its own continued referral of subscribers to the Hospital between 1998 and 2005, and hence questions the legal viability of defendant's promissory estoppel counterclaim.   *See e.g. Gilmour v American Nat. Red Cross,* 385 F.3d 1318 (11th Cir. 2004)(promissory estoppel claim failed because volunteer's reliance on oral statements  was unreasonable as a matter of law, in context of written statements  in Red Cross manuals); *Powers v Unum Corp.,* 181 Fed. Appx. 939, 2006 WL 1457700 (11th Cir. 2006);  *Mims v Cagle Foods JV, LLC*, 148 Fed. Appx. 762, 2005 WL 1400259 (11th Cir. 2005)(reliance on pre-contractual promise where contract expressly cancelled pre-contractual promises made reliance on promises unreasonable, defeating promissory estoppel claim);  *BMC Industries, Inc. v Barth Industries, Inc*., 160 F.3d 1322 (11th Cir. 1998).

       However, recognizing  that the reasonableness of the defendant's behavior in this regard is contingent, to some degree, on the information which it relayed  to the  plaintiff during the time frame in question, the court  has determined to reserve the promissory estoppel claim for resolution at trial, to be considered  in light of all the circumstances attendant to the parties' continuing relationship, including evidence bearing on the time and circumstances under which  the Hospital gained  actual knowledge of the withdrawal of Great-West Benefit from the PHCS PPO network.

Accordingly, the plaintiff's motion for summary judgment on the defendant's promissory estoppel counterclaim is denied.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 17th day of March, 2008.

Daniel T. K. Hurley
United States District Judge

cc. All counsel

17